Good morning, Your Honors, and may it please the Court, Kenneth White appearing for Appellant Dr. Timothy Ryan. This morning in my argument I'm going to address almost exclusively CAP v. County of San Diego, the case that the Court asked us to be ready to address today. CAP conclusively supports Dr. Ryan's appeal on at least two crucial issues. One is, what right has to be clearly established to defeat a qualified immunity argument? And the second is, at the pleading stage, at a motion to dismiss, how do you handle the defense's assertion of an alternative explanation for retaliatory conduct? CAP resolves both of those strongly in Dr. Ryan's favor. Let me talk first about the level of generality. What CAP reinforces from this circuit is that in a First Amendment retaliation case, what has to be clearly established is not the right to be free from retaliation. That's established. Excuse me. What is clearly established is the right to be free from retaliation. There is no need to establish the right to be free from a particular type of retaliation. So in CAP, the social worker agency argues, well, there's no case saying that you can't retaliate by convincing a spouse to seek sole custody of her kids. Of course there's not. This is a classic defense argument in a 1983 to try to make the right established as hyper-narrow as possible. What this court says is that the type of retaliation is secondary. The important thing is the lead issue, which the court says very plainly, that you have a right not to have retaliatory action taken against you by government actors. So can I ask a question about that? Because CAP is interesting. There does seem to be some tension with recent Supreme Court cases there. But obviously, CAP is now in the Ninth Circuit presidential. But I'm wondering if part of that is dicta because he in CAP, the court then goes on to point to a case that's directly on point. And so why don't we say, well, you know, there is a case directly on point. So this other comment about how clearly established it needs to be is really dicta because CAP points to a case that defines it. So I'm sort of wondering why the opinion actually goes into how general it needs to be when there actually was a case directly on point. Well, and I thought and it has been the appellant's position that this issue, that the type of retaliation is not important, has been well established already, that it's not new law. I think CAP articulates it very well. I don't know that the case there that CAP cites is so exactly on point that it renders this issue immaterial or dicta, the issue that the form of retaliation is irrelevant. Well, you say it's clearly established previously, but I'm looking at a 1998 decision Brewster versus Board of Education of the Linwood Unified School District. I don't know if you've had a chance to look at this one. But in that case, it's also First Amendment retaliation. And we specifically said the legal right at issue is not the generic right to free speech, nor is it the right to be free from expression-based retaliatory discipline or discharge. Rather, whether or not Brewster enjoyed a clearly established right to speak depends upon the sensitive ad hoc balancing that Pickering entails. So I'm just trying to navigate these cases, and it's not easy to do, not even within our own circuit, let alone what the Supreme Court said. I think Brewster is further along on analyzing another issue, and that is the ultimate issues in a 1983 First Amendment retaliation case that get into the balancing and the Pickering test. But we're not there yet. We're still at the qualified immunity stage. At the very least, CAP echoes prior decisions saying you don't have to look at the type of retaliation. So that raises the question, what do you look at? CAP seems to indicate that the issue is a fairly broad right not to be retaliated against by the government. But even if we go numerous steps more specific than that to a right of government employees not to be retaliated against for reporting this conduct, then we've cited numerous cases that established that years before the instances here. Those are the Daria and Marabee and Frye tag cases, all on page 20 of our opening brief. Can I go back to it? Because it seems to me that one difference between CAP and this case, and you sort of touched on it, is the employment context versus, I mean, CAP was not an employment context. There was a government official that, you know, just more generally was taking retaliatory action based on alleged First Amendment exercise. So does that make a difference? It does not, Your Honor. I suspect that the reason they didn't say anything more specific was it wasn't called for here. But, again, it's the prior cases that establish very clearly that there's a right not to be retaliated against when you're a government employee for reporting this conduct. So now you're defining it, though, more specifically because you're saying it's for reporting misconduct. I'm doing so rhetorically, Your Honor. I'm saying even if you accept the argument that the defense always tries to make that it has to be hyper-specific, that hyper-specificity is already here. It's in a series of cases from this circuit. So you say if we have to define it, it's the reporting of misconduct. That's a specific type of First Amendment exercise that gives you this right. I'm saying you don't need to make this call because even if you defined it as narrowly and specifically as possible, if a government employee's right to report misconduct, it's well established. So you don't need to make that call about what level it would be, whether it's a generalized right to be free of government retaliation or a more specific level. The problem is if we define it so generally, to me that just creates huge problems because, I mean, every employee is going to claim retaliatory right or they're going to try and exercise, you know, any kind of First Amendment right and then bring a 1983 action to inoculate themselves from adverse action. And that's problematic. Now, what you said before has some appeal because you're saying it's misconduct. And now that's a different specific type. Exactly, Your Honor. What I think the court is saying is that obviously there should be times when the First Amendment doesn't win. And I agree. That's what the Garcetti and Pickering and all those cases are for. From that analysis, the elements that we would have to prove. Were those on summary judgment, those other cases, Pickering and Garcetti? Pickering, I believe, which is from the early 20th century, I believe. Honestly, I don't remember. Garcetti was at summary judgment. But that is a completely different issue. That one is about when someone is speaking in their individual capacity. And I'd be happy to address that. Well, I'm more, and I think you sort of, you brought up this as your second argument, so maybe you can lead into your second argument. But that is one thing where, I mean, CAP was on a motion to dismiss. Our case, this case here, is on a motion to dismiss. Exactly. What impact does that have? Is there a different standard for qualified immunity on a motion to dismiss versus a summary judgment motion? It's not that there's a different standard for qualified immunity, Your Honor. It's that the court treats the allegations somewhat differently. So that's the second question I talked about. When there is an obvious alternative explanation, that's the language that the CAP refers to, how do you treat that in a motion to dismiss? When the defense is saying, no, really, the reason was this, not for retaliation. What CAP indicates is that, basically, adequately pleaded allegations of retaliatory motive and that the other reasons are protectual are treated as true at the pleading stage. Now, the court in CAP made it very clear. Let's assume, I give you that, and let's assume that the complaint, we take all the allegations as true. What is the retaliatory act that was taken by the government according to the complaint? Here, it's the initiation of the MEC investigation. But you can see why that's problematic, right? Because, basically, whenever the government opens up an investigation, you're now handing that individual a potential First Amendment retaliation claim. I understand the argument, Your Honor, but it's that idea that an investigation, even by a medical body, can be sufficient to be retaliatory is well established. Is it? What cases are those? It's all the way back to Ulrich. But I thought it was more than an investigation in Ulrich. I thought there was actually some adverse action that was taken, like they were actually put on leave. I didn't read that in the complaint, that he was actually put on leave, even. There were further events after the complaint, but the complaint alleges that they started the MEC proceeding. So it's not just an investigation. It's a proceeding that could lead to him losing his privileges, and then also that there was a letter sent in April of 2014 indicating the intention to suspend employment. It may be outside the record, but I read the complaint and was left in suspense in April 2017 when there was this vote. What happened after that? He has been, in effect, suspended from the hospital. That's not in the record. I mean, I guess if whatever doubt there might be about whether the investigation is an adverse action, the suspension seems like it clearly would be. So if we were to conclude that the investigation was insufficient, would you be able to amend to add that? We would certainly be amending promptly on remand, Your Honor. And I point to paragraph 37 of the complaint in the record, which is page 259 of the record, shows also the follow-up letter indicating an intent to suspend. So why didn't you amend below? I mean, I have a little bit of an issue or question about whether that has been waived. Your Honor, it was on appeal. Well, but normally in a situation like this, you might, in the alternative, plead, I guess that's a question, if you don't ask to amend in the alternative, do you waive that argument? I don't think so, Your Honor, because the matter was on appeal. The district court had lost jurisdiction. If the court is asking why I didn't ask this court to remand. No, I'm asking when the motion for summary judgment came in, or excuse me, the motion to dismiss was filed, when you responded to that, normally what I've seen in cases like this is say, look, we think that this pleading standard satisfies it, but if it doesn't, we would ask for an opportunity to amend the complaint to add new allegations. And you apparently had some allegations. Maybe I was unclear, Your Honor. The new allegations happened after Judge Reel ruled on the motion to dismiss. So we did not have that. We did ask for leave to amend, but we did not. You did ask for leave to amend. Yes, but we did not bring up that point as a possible additional point because it hadn't happened yet. This has been an ongoing saga battle with the hospital over this. Do you want to reserve? I do. I would like to reserve the remainder of my time unless the court has any particular questions. All right, so next counsel, do you want to stay down there? It's up to you. It's fine. I'll try to do it up there, and if I start to feel weak. Yeah, let's be better safe than sorry. Yes. All right. Thank you very much for your indulgence. May it please the court, John Manier for the defendants. There are seven defendants, and one thing I want to stress at the outset is that they all need to be taken individually. The allegations against them are not all the same. To address the CAP case, a couple of points. First of all, I think it's important to note that it's not an employment case. And in the employment context, you have the issue of the adverse employment action, which I believe the relevant definition of that is set forth in the Burlington Northern Railroad case versus White from 2006, the U.S. Supreme Court. And so you do have to, in an employment retaliation case, satisfy that element. That was not there in CAP. Another thing. Can I ask a question about that? Because what, in your view, was the best reading of the retaliatory action in the complaint? Do you agree that the complaint adequately alleges suspension? No. There's no suspension there at all in the complaint. Also, I want to. There's a notice that they were going to suspend him, right? They voted to suspend him? Yes. The Medical Executive Committee voted to recommend the suspension. And under the bylaws, Dr. Ryan had the right and exercised his right to appeal that. So the Medical Executive Committee, which is the body that made that recommendation and which is really the source of the alleged retaliatory action here, is out of the process at that point. It goes to a judicial review. But if he hadn't appealed it, they would have suspended him? Right. That is in the bylaws. If he had not appealed it, he would have been suspended. I mean, doesn't that sort of answer the question, then, that suspension is, I mean, for purposes of your clients, suspension is really alleged in the complaint? Except that it's not alleged because he was not suspended. He exercised his right. And, you know, these are votes that the, I don't know how he knows who voted which way because these are confidential proceedings. I don't think he's allowed to know who voted which way. But he alleges, I would say that he probably should have added some facts to explain how he would know in light of the fact that under the California Evidence Code, Section 1157, these are confidential and privileged proceedings. Nevertheless, the allegation is that, so of the seven defendants, five of them are on the Medical Executive Committee. Two of them are not. And I don't think that there's any adverse action plausibly alleged against Dr. Z and Dr. Katz. Of the five who are on the Medical Executive Committee, one is Dr. Mahajan, who they allege voted to, in favor of suspending. However, Dr. Mahajan is an ex officio member who has no voting rights. He's the CMO of the hospital. So he could not have voted. And they don't explain how he could have voted, given the undisputed fact that he's only ex officio. Another defendant, Dr. DeVirgilio, I hope I'm pronouncing that right. But does that really matter? I mean, if the board votes, are we really going to get into three of them voted for it, two of them voted against it, you can only proceed against the three who voted in favor of it? I mean, you're proceeding against the board and individual members. You can only proceed against the individuals. The board is not a defendant in the case. So it's only against individuals. And Dr. DeVirgilio is not alleged to have voted in favor of the recommendation to suspend. So only three of the defendants are actually alleged to have made that vote, Dr. Putnam, Dr. Vinch, and Dr. Lewis. Those are the only ones who are even alleged to have taken that vote. But if it had been a minority vote, then it wouldn't have been a recommendation. That's a struggle I have. I'm just not familiar with this idea that you could go after only those who the action is done by a majority vote. So if two of them voted in favor and three of them voted against, they wouldn't have a claim against the two that voted in favor in that circumstance. Well, I don't think they have a claim against any of them because I don't think that the mere vote is an adverse action. It's a recommendation which was only an intermediate step in the process. Dr. Ryan predictably exercised his right to appeal. By the way, this isn't in the record, but to follow up on what Mr. White said, my understanding is that Dr. Ryan actually ended up resigning from the professional staff. And so, I mean, we would eventually make the argument that this moots the whole case. But that's not in the record. And the question before this court is whether what happened up to the time the complaint was filed is an adverse employment action. Suppose we just look at the initiation of the investigation. Even if we set aside cap on the ground that it wasn't an employment case, although it seems to me it uses pretty broad language that would cover employment. But setting aside cap, what about Ulrich? Because that seems to me almost exactly the same. You had a doctor and they threatened him and they initiated the investigation. And we said there that that was enough to be an adverse action to support the retaliation claim. The problem is what's alleged in this complaint, the First Amendment complaint, because the investigation by the MEC is not even discussed in the First Amendment complaint. And I read it again. It's in the briefs. It's not in the complaint. They take a different tack. They talk about initiation of disciplinary proceedings. They don't talk about the investigation. Well, I guess I hadn't appreciated and maybe still don't appreciate the distinction between an investigation and the initiation of disciplinary proceedings. I mean, they both seem like we're starting some action where we're going to look at things and maybe do something to you. And more relevantly, they both seem like activity that would deter a reasonable person under the Burlington standard from engaging in First Amendment activity. But there's also an important factual distinction between this case and Ulrich, which is that in this case the investigation was initiated not by the action, alleged action of any individual MEC members. It is instigated by a complaint by someone who is not a party to this case, and that's Dr. Rodney White. He's the one with whom Dr. Ryan has had this ongoing dispute. So it was Dr. White who, in August of 2015, made the complaint and asked that action be taken against Dr. Ryan primarily because he alleged that Dr. White, Dr. Ryan violated medical confidentiality laws, both state and federal, when he was basically investigating his allegations against Dr. Rodney White. So in this case, Dr. White put this in the lap of the Medical Executive Committee. And under the bylaws, there was really no choice but to investigate and look at this. There's no facts alleged that says on its face this was an implausible allegation. I guess that would be, if you're right about that, that would establish that it wasn't retaliatory. Right? I mean, they would say, we weren't undertaking this because of your protected speech. We were doing it because we have to investigate the complaints we got. But I don't see how it bears on whether it's an adverse action. I mean, the investigation in this proceeding is either an adverse action or it's not. Well, I don't think the investigation itself is an adverse action. The investigation could have cleared Dr. Ryan. And that takes me back to I thought Ulrich establishes that conducting the investigation is an adverse action. And why wouldn't it be? I mean, wouldn't it deter a reasonable person from, you know, you're going to be subject to an investigation if you speak out? Well, I think that Judge Nelson had an appropriate response to that, which is that if a mere investigation is going to be an adverse action, then you're basically handing a government employee a First Amendment claim any time an investigation is launched. But they still need to be able to show the motivation for it, right? I mean, you still need to show that it was in retaliation for speech and not for, like, if you engaged in some obvious misconduct, you're not going to be able to show that. Well, it's not plausible to allege that the investigation itself was retaliatory when the complaint admits that the investigation was a response to Dr. White's letter and making very serious allegations of violation of medical privacy laws. And under the bylaws, there was really no choice in this matter but to investigate. But it seems like we're kind of getting off what this case is about. I understood this case at this stage is about qualified immunity. It is. And so now we're kind of talking about factually, well, why would someone do this and what's the motivation for doing that? We're not at that stage yet, are we? We're not at that stage. So maybe we should probably confine responses to Judge Miller's questions in the context of qualified immunity. So really, whether it's a matter of clearly established law that the actions that were taken were adverse actions, and I understand that Kapp states that the precise details of the alleged retaliatory acts are of secondary importance. Secondary, of course, doesn't mean nonexistent importance. And in Kapp, the defense argument was, well, there's not a case on point that says that this exact factual situation was an adverse action. So a reasonable person in the social worker's position would not have known that her actions could subject her to First Amendment liability. Except that the factual allegations in that case were that she coerced the mother of the children to file an action in court that threatened the loss of custody for the father, who is the plaintiff. And the court said the threat of losing custody of one's children would ordinarily chill First Amendment activity, and that a reasonable official would know that taking the serious steps of threatening to terminate a parent's custody of his children, when the official would not have taken the step absent her retaliatory intent, violates the First Amendment. So you had some pretty clear facts in that case. And so the details may be of secondary importance, but the focus being on qualified immunity, what a reasonable person in the defendant's position would know. So we submit that in our case, the three, the only defendants where there's really any even discussion are the ones who voted in favor of the recommendation for the suspension. Dr. DiVirgilio, who didn't vote on that, I don't see how he can be anything but qualifiably immune when he didn't even take an action, allegedly. Dr. Mahajan couldn't because he couldn't vote. And you have Dr. Yee and Dr. Katz who aren't even on the committee. And there's just this very vague allegation that they ratified and encouraged. There's no factual context to explain how they could have done so. It would be like me ratifying something where I'm not a part of it. Could you address our decision in Kosalter? Because, you know, there we had a list of actions that we said qualify as adverse actions, and one of them was an unwarranted disciplinary investigation. Why doesn't that clearly establish the law here? Well, so there's a couple things about Kosalter. So there were actually, I counted, there were 16 actions. And they said, the courts, this court said, when taken together, it was a severe and sustained campaign of retaliation. The court also said, you know, some, maybe all of these, emphasis on maybe, were individually adverse actions. They didn't come right out and say the investigation was adverse. They did also qualify it by saying it was an unwarranted investigation. Here, there's not an allegation that it was an unwarranted investigation. In fact, again, it was in response to Dr. White. You know, in Ulrich, the investigation was at the behest of the defendant. And it ended up in actions that made it virtually impossible for the plaintiff to obtain employment as a practicing physician at any hospital in the country. Now, I would stipulate that that's materially adverse and that there would be no qualified immunity under those facts. I'm not sure Ulrich was a qualified immunity case, but neither here nor there. There's another investigation case that is discussed. Watch your time, counsel. Yes, I know, and I'm just about done. White v. Lee, where the details of the investigation, the investigation went on for many weeks or months longer than the presumptive limit. So there was an abusive aspect to the investigation in that case that's not alleged here. There's no details about this investigation at all. So I don't believe that they've plausibly alleged that any of the defendants, certainly not all of them, engaged in adverse employment actions or that a reasonable person in the position of any or all of these defendants would have known. And in addition to other arguments, I think that the judgment should be affirmed. Thank you very much, counsel. Thank you very much. And good way to hang in there. Thank you. Good morning here again, Your Honors. Counsel's right about one thing. The term I used in the first amendment complaint rather than investigation was procedure. So specifically in paragraph 30, it says that they initiated an internal disciplinary procedure, which sought to revoke the professional staff privileges. I think that's actually worse than calling it investigation. But the bottom line is the complaint specifically alleges the purpose was to revoke his staff privileges and that when they later sent him a notice, and this was a bit later in paragraph 35, of the proposed action, which is to revoke his privileges. And then there's the allegation of the letter later saying that he's going to be suspended. So all those are more than what was present in Ulrich. And we cited a few other cases, Poland and Freitag, that indicate that whether or not you call it an investigation, it can be sufficient. Another thing I'd like to point out is that the allegations here are even stronger than I believe they are in Ulrich because we made the specific allegations that this type of proceeding or investigation or whatever you call it, just by initiating it, has permanent damage to a doctor's reputation and ability to get a job. That once it started, that doctor is forever harmed. Is it public? It is not. No, the proceeding is not itself public. But doctors have to truthfully disclose every time they try to get a job whether or not they've ever been subject to a proceeding. And that absolutely is something that would deter any doctor from speaking. I wanted to very briefly, I think the court talked about the adverse employment action, I wanted to talk about the allegation that we didn't specify things about each defendant. That's simply not true. For instance, as to Dr. Katz, who was the head of DHS, it specifies that he met with people, that someone told him, wait, this is retaliatory, and that he endorsed and ratified by saying, well, we'll let nature take its course. As to all the members of the MEC, whether or not they actually voted, it alleges specifically in complaint that they met together with the higher-ups. Sorry, back to Dr. Katz, he would have had the opportunity to just cut this off? Yes, but he's the head of DHS, and he basically endorsed it. That's what the complaint alleges. Under CAP, those allegations are sufficient if we've adequately and plausibly alleged that the proceeding was a pretext, and we have. What CAP demonstrates is that at the pleading stage, at the motion to dismiss, as long as we've stated specific facts, which we have, including them saying that Dr. Ryan's reporting these things as one of the reasons for the discipline, then that is sufficient to get over defense allegations of an alternative theory. Thank you, members. Thank you, counsel. Thank you both for your argument in this case. This matter is submitted. Now going back to the calendar for today.
judges: Owens, Nelson, Miller